IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**RANDALL SCOTT MICHAEL,**

        **Petitioner,**

v.                                        Civil Action No. 1:08cv43
                                              (Judge Keeley)

**WAYNE A. PHILLIPS,**

        **Respondent.**

## REPORT AND RECOMMENDATION

The petitioner initiated this case on January 18, 2008, by filing an Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241 in which he seeks an order directing the Bureau of Prisons ("BOP") to consider him for a full six months placement in a Halfway House or Home Confinement pursuant to the provisions of 18 U.S.C. § 3624(c). The petitioner paid the required filing fee on that same date.

On January 22, 2008, the undersigned made a preliminary review of the file and determined that summary dismissal was not warranted at that time. Consequently, the respondent was directed to show cause why the petition should not be granted. On February 22, 2008, the respondent filed a Motion to Dismiss, and on February 25, 2008, a Roseboro Notice was issued. The petitioner has not responded to the Notice. This case is before the undersigned for a report and recommendation pursuant to LR PL P 83.09, et seq.

## I. Factual and Procedural History

On January 27, 2006, the petitioner was sentenced in the United States District Court for the

Northern District of West Virginia to 20 months incarceration for violation of 18 U.S.C. §1341.F, Frauds and Swindles. See 1:01cr-00005-IMK. The petitioner was committed to the custody of the BOP on October 23, 2006. His projected release date, via Good Conduct Time, is July 17, 2008. (Doc. 10, p.4). However, the petitioner has two detainers lodged against him from the State of West Virginia. In West Virginia Case No. 01-F-33, the petitioner has two concurrent 1-10 year prison sentences for Forgery and Uttering to be run concurrently against his federal sentence. The petitioner's minimum discharge date for that sentence is October 16, 2011. (Doc. 10, p. 7). The petitioner's second detainer arises out of West Virginia Case No. 06-F-228, in which he was convicted of three counts of Conducting Fraudulent Schemes and sentenced to 1-10 years in prison to run concurrently to his federal sentence. The minimum discharge date for that state sentence is July 16, 2012. (Doc. 10, p. 13).

In the petition, the petitioner asserts that the FCI Morgantown continues to apply the BOP policy of capping an inmate's release time to a Residential Release center ("RRC" previously "CCC" or "Halfway House) at 10% [of the sentence imposed] in violation of this Court's previous holdings. As relief, the petitioner seeks an order directing FCI Morgantown to immediately adjust the practice at that institution and place him in the Clarksburg, West Virginia halfway house, or on home confinement, for "the full six months that he is entitled to and not just the last 10% of his sentence."

The respondent asserts the petitioner failed to exhaust his administrative remedies. In addition, the respond argues that the petitioner's detainers make him ineligible for CCC placement. Therefore, the respondent moves that this matter be dismissed with prejudice.

## II. Historical Background

Prior to December 2002, the BOP had a policy of placing prisoners in a CCC for up to six

months, regardless of the total length of the inmate's sentence. See BOP Program Statement 7310.04. However on December 13, 2002, the Office of Legal Counsel for the Department of Justice issued a memorandum stating that this practice was inconsistent with 28 U.S.C. § 3624(c) which, in its opinion limited an inmate's placement in a CCC to the lessor of six months or ten percent of the inmate's sentence. Section 3624(c) provides as follows:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

The BOP adopted the Office of Legal Counsel's interpretation of the statute, and numerous habeas petitions challenging the December 2002 Policy were filed. The First and Eighth Circuits, as well as many district courts, [1] found the policy contrary to the plain meaning of 18 U.S.C. § 3621(b) which states:

> The Bureau shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering -
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;

---

[1] See Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004); Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Cato V. Menifee, 2003 WL 22725524 at *4 (S.D.N.Y. Nov. 20, 2003 (collecting cases).

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence -

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

(B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In response to those decisions, the BOP created new regulations in 2005 governing the placement of inmates in CCCs. These regulations state that the BOP was engaging in a "categorical exercise of discretion" and choosing to "designate inmates to [CCC] confinement . . . during the last ten percent of the prison sentence being served not to exceed six months." 28 C.F.R. § 570.20-21. The new regulation expressly prohibits placement of prisoners in CCCs prior to the pre-release phase of imprisonment and provides:

> When will the **Bureau designate** inmates to **community** confinement?
>
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the **last ten percent** of the **prison sentence** being **served**, not to exceed six months.
>
> (b) We may exceed the time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program . . . or shock incarceration program) . . .

28 C.F.R. § 570.21. (Emphasis added)

It is this regulation which prompts the petitioner's habeas challenge in the instant case.

### III. Analysis

**A.  Pertinent Caselaw**

4

The Third Circuit Court of Appeals was the first court of appeals to address the issue raised in the instant case. In <u>Woodall v. Federal Bureau of Prisons</u>, 432 F.3d 235 (3d Cir. 2005), the Third Circuit recognized that the various district courts to address this issue were split as to the validity of the BOP's 2005 regulations. <u>See</u> <u>Woodall</u> at 244 (collecting cases). However, after analyzing the conflicting opinions, the Third Circuit found the regulation unlawful. <u>Id.</u> Specifically, the Third Circuit found that the governing statute, 18 U.S.C. § 3621(b), "lists five factors that the BOP must consider in making placement and transfer determinations. The 2005 regulations, which categorically limit the amount of time an inmate may be placed in a Community Corrections Center ("CCC"), do not allow the BOP to consider these factors in full." <u>Id.</u> at 237. More specifically, the Court noted:

> [t]he regulations do not allow the BOP to consider the nature and circumstances of an inmate's offense, his or her history and pertinent characteristics, or most importantly, any statement by the sentencing court concerning a placement recommendation and the purposes for the sentence. And yet, according to the text and history of § 3621, these factors must be taken into account. The regulations are invalid because the BOP may not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations.

<u>Id.</u> at 244; <u>see</u> <u>also</u> <u>Wedelstedt v. Wiley</u>, 477 F.3d 1160 (10th Cir. 2007); <u>Levine v. Apker</u>, 455 F.3d 71, 85-87 (2d Cir. 2006); <u>Fults v. Sanders</u>, 442 F.3d 1088, 1092 (8th Cir. 2006).

Relying on the clear weight of authority, this District has likewise concluded that the challenged regulations are invalid. <u>See</u> <u>Smith v. Gutierrez</u>, 2:06cv121 (N.D.W.Va. Sept. 26, 2007) (Maxwell, Sr. J.); <u>Simcoke v. Phillips</u>, 1:07cv77 (N.D.W.Va. Sept. 18, 2007) (Keeley, C. J.); <u>Jaworski v. Gutierrez</u>, 5:06cv157 (N.D.W.Va. Aug. 23, 2007) (Stamp, Sr. J.); <u>Murdock v. Gutierrez</u>, 3:06cv105 (N.D.W.Va. July 24, 2007) (Bailey, D.J.). However, in doing so, the Court has made clear that such a decision does not entitle any inmate to an Order from this Court

directing that he be immediately transferred to a CCC for the last six months of his sentence. Id. In fact, the Court has explicitly noted that the BOP's regulations are invalid only to the extent that an inmate's placement in a CCC is limited to the lessor of 10% of his sentence, or six months, without consideration of the five factors set forth in 18 U.S.C. § 3621(b). Id. Thus, the invalidation of the BOP's regulations merely entitles an inmate to have his CCC placement considered in accordance with the five factors set forth in § 3621(b).

Accordingly, were the petitioner eligible for CCC placement, the relief he requested would not be available. He would not be entitled to an order directing his placement in a halfway house or home detention for the entirety of his final six months of federal detention. However, Bureau of Prisons' policy precludes halfway house or CCC placement for inmates with detainers which will likely lead to arrest, conviction, and confinement. See BOP Program Statement 7310.04. Courts have consistently deferred to the BOP's decision in this regard and there is a history of upholding this rule. See Mclean v. Crabtree, 173 F. 3d 1176, 1185 (9th Cir. 1999); Fernandez-Collado v. I.N.S., 644 F. Supp. 741, 744 (D. Conn. 1986)("Petitioner has neither a legitimate statutory nor constitutional entitlement to those prison programs from which he may be denied access as a result of the detainer."), aff'd 857 F.2d 1461 (2nd Cir. 1987).

Here, the detainers clearly will result in petitioner's confinement by the West Virginia Division of Corrections, with a minimum discharge date of July 16, 2012, as a result of the second detainer. Accordingly, the petitioner is not eligible for CCC placement, and his arguments regarding FCI Morgantown's policy of capping CCC placement at 10% of the sentence imposed have no bearing on his situation

### IV. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss (dckt. 7) be **GRANTED** and the petitioner's § 2241 petition be **DENIED** and **DISMISSED WITH PREJUDICE.**

Within ten (10) days after being served with a copy of this /Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); .

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Report and Recommendation to counsel of record via electronic means.

DATED: April 7, 2008

    /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE